Leonor **RODRIGUEZ** et al., Plaintiffs-Appellants,

v.

Raymond W. **VOWELL** et al., Defendants-Appellees,

Antonia A. Aguirre et al., Intervenors-Appellants.

No. 72–1663.

United States Court of Appeals,
Fifth Circuit.

Jan. 24, 1973.

Melvin N. Eichelbaum, Frederick J. Deyeso, San Antonio, Tex., Jerry Covington, Brownsville, Tex., Nancy Duff Levy, New York City, for appellants.

Melvin E. Corley, Asst. Atty. Gen. of Tex., Carolyn Busch, Austin, Tex., for appellees.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

This appeal is the third in a series of class action attacks against regulations of the Texas State Department of Public Welfare governing the availability of public assistance benefits under the Aid to Families with Dependent Children (AFDC) program. *See* Lopez v. Vowell, 5 Cir. 1973, 471 F.2d 690, and Reyna v. Vowell, 5 Cir. 1972, 470 F.2d 494. The regulations being challenged in the case *sub judice,* paragraphs 15 and 16 of § 3310 of Texas *Financial Services Handbook* [1] deny AFDC grants to fami-

---

1. Paragraphs 15 and 16 of § 3310 provide: Income and resources accruing to a child in his own right (for example, Veteran's Compensation, child support from a legal parent, Social Security, etc.) will be considered in determining the child's eligibility and the amount of his grant. These resources accruing to a child in his own right cannot be diverted to meet the needs of other members in the household but must be applied towards meeting the child's own needs. *If this income is sufficient or more than sufficient to meet the child's recognizable needs, the child would not be eligible to be certified or to be considered dependent.*

lies in which the child (or children) has income "in his own right" which is greater than his own State defined recognizable needs, even where such income is less than the recognizable needs of both the child and his caretaker relative. The appellants allege that paragraphs 15 and 16 are inconsistent with the Social Security Act and therefore violative of the Supremacy Clause of the Constitution; alternatively, they assert that the regulations violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The district court dismissed the appellants' constitutional challenge out of hand. Moreover, the court determined that because the federal "eligibility criteria for AFDC benefits . . . is [sic] merely precatory and not strictly binding on Texas," the regulations were not in conflict with the federal legislation. We reverse.

■ Although each State may refuse to participate in the federal welfare program, once a State decides to participate, it must maintain a system consistent with the Social Security Act. Townsend v. Swank, 1971, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448; Rosado v. Wyman, 1970, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442; King v. Smith, 1968, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118; see Lopez v. Vowell, supra; Reyna v. Vowell, supra. With respect to the AFDC program, every State must comply with the requirement of §

402(a)(10) of the Act [2] that aid be promptly provided to "all eligible individuals." Townsend v. Swank, supra; Lewis v. Martin, 1970, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561; Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; King v. Smith, supra. Furthermore, the Supreme Court in Townsend held that eligibility for AFDC assistance is not to be determined by each State, but rather by reference to the federal eligibility standards. In short, federal criteria for AFDC eligibility are not optional, as the district court concluded; they are mandatory.

■ The plain language of the Social Security Act, its legislative history, and the relevant decisional precedent make clear that the needs of the caretaker relative, as well as those of the dependent child, are to be considered in deciding if a family is eligible for an AFDC grant. Recognizing the inseparability of the needs of the child from the needs of the relative with whom the child is living, § 401 of the Act emphasizes that the purpose of the AFDC program is to help the child by preserving and strengthening the family entity.[3] Congress appreciated that granting aid to the dependent child alone would not fully meet the child's need for care and therefore required that the caretaker be a relative of a specified degree so that the caretaker would have a natural concern for the

*In instances where all potentially eligible children in a family have their individual needs met by benefits accruing in their own right, we have no needy AFDC children. Therefore there is no basis for making an AFDC grant, regardless of whether or not there is sufficient income to meet group needs.* (emphasis supplied).

2. In pertinent part § 402(a)(10) provides: all individuals wishing to make application for aid to families with dependent children shall have opportunity to do so, and . . . aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals.

42 U.S.C.A. § 602(a)(10).

3. In pertinent part § 401 provides:

For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy children *and the parents or relatives with whom they are living to help maintain and strengthen family life* and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, there is authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part. . . .

42 U.S.C.A. § 601 (emphasis supplied).

child's welfare. Furthermore, as the benefits which flow from living at home rather than in an institution were deemed important, the relative was required to care for the child in the relative's own home, 42 U.S.C.A. § 606(a); and, as a condition of approval of a State plan, Congress provided in § 402(a)(7) that "the State agency shall, in determining need, take into consideration any . . . income and resources of any child or relative claiming aid to families with dependent children. . . ." 42 U.S.C.A. § 602(a)(7). Thus, in measuring need, the need of the family unit is the question, not the need of the child alone; for the goal of strengthening the family entity can only be achieved if the needs of the caretaker relative are included in determining eligibility. Accordingly, § 406(b) of the Act explicitly provides that "aid to families with dependent children" includes assistance to meet the needs of the caretaker relative:

> (b) The term "aid to families with dependent children" means money payments with respect to, or . . . medical care recognized in behalf of or any type of remedial care recognized under State law in behalf of, a dependent child or dependent children, and includes (1) *money payments or remedial care recognized under State law to meet the needs of the relative with whom any dependent child is living.* . . .

42 U.S.C.A. § 606(b) (emphasis supplied).

Similarly, the legislative history of the 1950 amendments to the Social Security Act, which added coverage for caretaker relatives, demonstrates that eligibility of the caretaker was not made contingent upon the separate individual needs of the child. Supporters of the amendments stressed that the AFDC program would fail if it attempted to meet only the need of the child and ignored the unsatisfied needs of the caretaker. Several witnesses before the House Ways and Means Committee pointed out that caretaker grants were

essential if relatives were to be encouraged to care for a needy child in their own home, so as to minister to all of the child's needs—emotional as well as financial. Caring for a dependent child prevents the caretaker from working and, in the absence of other funds, the caretaker would be forced to share in the meager payments made to the child. *See* House Committee on Ways and Means, Hearings on H.R. 2892 and H.R. 2893, 81st Cong., 1st Sess. at 14 and 399. The policies behind extending assistance to caretaker relatives were clearly explained on the floor of the Senate by Senator Lehman:

> This proposal is a simple matter of humanity, common sense and justice. It is obviously neither humane nor sensible to make provision for children who are needy because of the death, disability or desertion of the family breadwinner and fail to make provision for the mother [or some other caretaker relative] of such children. This is particularly true in view of the pitiful inadequacy of the Federal funds now made available for such children.

96 Cong.Rec. 8794 (June 19, 1950).

That the congressional purpose underlying the AFDC program was to assist dependent children by also meeting the needs of their caretaker relatives is further manifested by the repeated designation of caretaker relatives throughout Title IV of the Act as recipients of aid along with dependent children. For example, each State plan must provide a program of family services and child welfare services "for each child *and relative* who receives aid to families with dependent children. . . ." 42 U.S.C.A. § 602(a)(14) (emphasis supplied). Every participating State must make provision for referral of "each appropriate *relative* and dependent child receiving aid under the plan" to the State Employment Service for job placement, 42 U.S.C.A. § 602(a)(15)(A) and (19)(A)(i) (emphasis supplied), and for referral to the appropriate court or law enforcement

agency of any "home in which a *relative and child receiving aid reside*" which the State has reason to believe is unsuitable for the child to live. 42 U.S.C.A. § 602(a)(16) (emphasis supplied).

Perhaps the strongest indication that Congress intended to assist dependent children by strengthening the family unit through aid to the caretaker relative is the fact that in 1962 the name of the public assistance program was officially changed from "Aid to Dependent Children" to "Aid and Services to *Needy Families* with Children." Pub.L. 87–543, 76 Stat. 185 (July 25, 1962) (emphasis supplied). The Senate Report accompanying the bill explained that "[i]n line with the *new emphasis on family services,* the bill would provide that the name of the program be changed to 'Aid and Services to Needy Families with Children,' and that the name of the assistance provided under that program be changed to 'Aid to Families with Dependent Children.'" S.Rep.No.1589, U.S.Code Cong. and Admin.News, 87th Cong., 2d Sess., pp. 1943, 1956 (1962) (emphasis supplied).

Recognizing the significance of this change, Justice Stewart, writing for the Court in Dandridge v. Williams, *supra,* emphasized that the very title of the program and the repeated references to families added in 1962

> show that Congress wished to help children through the family structure. The operation of the statute itself has this effect. From its inception the Act has defined "dependent child" in part by reference to the relative with whom he lives. *When a "dependent child" is living with relatives, then "aid" also includes payments and medical care to those relatives.* . . .
>
> The States must respond to this federal statutory concern for preserving children in a family environment.

. . .

397 U.S. at 479, 90 S.Ct. at 1158 (footnote omitted) (emphasis supplied).

■ Because paragraphs 15 and 16 of the Texas *Financial Services Handbook,* in determining the financial eligibility (or level of need) of a family applying for AFDC assistance, completely ignore the group needs of the family and only consider the individual needs of each dependent child, they are patently inconsistent with federal eligibility criteria. Under the federal statutory scheme, assistance is to be provided to "needy families"; therefore, the needs of the caretaker relative must be taken into account, as well as the needs of any dependent children, in measuring the family's level of need.

■ Paragraphs 15 and 16 not only violate the provisions of the Social Security Act, they also contravene the federal regulations promulgated thereunder. These federal regulations are just as binding on the States as the provisions of the Social Security Act. Lewis v. Martin, *supra;* King v. Smith, *supra.*

In essence paragraphs 15 and 16 *assume* that all of the income which a child receives in his own right is used entirely to meet the needs of that child, even if in fact some of the income received by the child is used to meet part of the needs of his needy caretaker relative. Where the amount received by a dependent child in his own right is sufficient to meet his recognizable needs, the Texas regulations deny all aid to the family with whom the child is living on the ground that there is no dependent child present. Similarly, where two or more dependent children reside in the home of a caretaker relative and one child receives income in his own right sufficient to meet his individual needs, the Texas regulations permit no assistance to that child, even though the income actually available to cover his needs may in fact be insufficient because he shares his income with his needy caretaker and with the other needy children in the family.

The Supreme Court has uniformly held that States are not permitted to indulge in presumptions as to the availability of income to needy members of an AFDC family. *See* Reyna v. Vowell, *supra,* 470 F.2d at 496. In so holding the

Court has repeatedly approved the federal regulations, 45 C.F.R. § 233.20, interpreting § 402(a)(7).[4] Gilliard v. Craig, 1972, 409 U.S. 807, 93 S.Ct. 39, 34 L. Ed.2d 66 (per curiam), aff'g W.D.N. C.1971, 331 F.Supp. 587; Lewis v. Martin, *supra*; King v. Smith *supra*. At the heart of 45 C.F.R. § 233.20 is the principle that in calculating the amount of any AFDC payment, "only such net income as is actually available for current use on a regular basis will be considered." 45 C.F.R. § 233.20(a)(3)(ii) (c). The purpose of this requirement is to make certain that income which is not *actually available* to a child or relative applying for AFDC assistance is not assumed to be available to meet that claimant's needs, thereby resulting in the ineligibility of the family or in the reduction of the amount of the grant. Gilliard v. Craig, *supra*; Lewis v. Martin, *supra*; King v. Smith, *supra*.

In *King* the Supreme Court invalidated Alabama's "substitute father" provision which assumed the availability of the income of a man cohabitating with the caretaker relative to meet the family's needs. In *Lewis* the Court struck down a California regulation that assumed the availability of income from a stepfather to his stepchildren, even though under State law he had no legal obligation to support them. Finally, in *Gilliard* the Court affirmed a three-judge district court decision that child support payments received by one dependent child in an AFDC family cannot be considered to reduce the welfare benefits of the other children in the family.

Accordingly, Texas' method of determining need pursuant to paragraphs 15 and 16 is invalid under the federal regulations insofar as it *automatically assumes* that all of the income accruing to a child is available to meet that child's needs, whereas in fact the child may share his income with other needy members of his AFDC family. It would likewise be impermissible for Texas to assume that the child contributes all of his own income to the support of his caretaker, or to the support of another AFDC claimant in his family, thereby covering all of that person's needs, since the child has no legal obligation to provide for the support of other members of his AFDC family.

■ Under federal law, a State's procedure for measuring the needs of an AFDC family must first take into account the group needs of the family as a whole—*i.e.*, the needs of the caretaker relative as well as the need of all of the dependent children. Furthermore, a State is only permitted to consider that income which is actually available to meet the needs of each individual claimant and that income which a member of the AFDC family has a legal obligation to provide for the support of each claimant. Gilliard v. Craig, *supra*; Lewis v. Martin, *supra*; King v. Smith, *supra*; Reyna v. Vowell, *supra*. The Texas regulations under attack are violative of both of these precepts, and therefore must be invalidated.

Having decided this case on the basis of the statutory claim, we venture no opinion on the Fourteenth Amendment issues.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

4. In pertinent part § 402(a)(7) provides: the State agency shall, in determining need, take into consideration any . . . income and resources of any child or relative claiming aid to families with dependent children. . . .
42 U.S.C.A. § 602(a)(7).