**Roseanna ROSELLI et al.,**
**Plaintiffs-Appellees,**

v.

**John J. AFFLECK, Individually and in his capacity as Director of the Rhode Island Department of Social and Rehabilitative Services, Defendant-Appellant.**

**No. 74–1084.**

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1974.

Decided Dec. 31, 1974.

W. Slater Allen, Jr., Asst. Atty. Gen.,
with whom Richard J. Israel, Atty. Gen.,
was on brief, for appellant.

Jay C. Lipner, Providence, R. I., with
whom John M. Roney and Kenneth F.
MacIver, Jr., Providence, R. I., were on
brief, for appellees.

Before COFFIN, Chief Judge, McEN-
TEE, Circuit Judge, and MOORE,* Sen-
ior Circuit Judge.

McENTEE, Circuit Judge.

Defendant, Director of the Rhode Is-
land Department of Social and Rehabili-
tative Services, takes this interlocutory
appeal from the issuance of a prelimi-
nary injunction precluding him from im-
plementing the state's new flat grant
welfare program to the extent it sup-
plants the state's former method of wel-
fare payments for the purchase of shel-
ter. We affirm.

■ As a condition of participation in
the federal AFDC program, states must
tailor their public assistance plans to
comply with the requirements of 42
U.S.C. § 602(a) (1970), King v. Smith,
392 U.S. 309, 316–317, 88 S.Ct. 2128, 20
L.Ed.2d 1118 (1968). Subsection (a)(23)
of § 602 provides: "[The States shall]
provide that by July 1, 1969, the
amounts used by the State to determine
the needs of individuals will have been
adjusted to reflect fully changes in liv-
ing costs since such amounts were estab-
lished . . . ." In essence the states
are required to fix a standard of need,
"a yardstick for measuring who is eligi-
ble for public assistance," Rosado v. Wy-
man, 397 U.S. 397, 408, 90 S.Ct. 1207,
1216, 25 L.Ed.2d 442 (1970), as a bench-
mark against which subsequent changes
in state welfare programs may be evalu-
ated. A state may choose to lower the
level of benefits actually paid to welfare
clients but it may not lower or obscure
its standard of need in such a way as to
disguise the step and avoid public scruti-
ny. 397 U.S. at 413, 90 S.Ct. 1207.[1] *See*

---

* Of the Second Circuit sitting by designation.

1. The Supreme Court has aptly characterized
this provision as a "child born of the silent

union of legislative compromise," Rosado v.
Wyman, 397 U.S. 397, 412, 90 S.Ct. 1207,
1218 (1970). Congress, although unwilling to
require states to make mandatory adjust-

*also* New Jersey Welfare Rights Org. v. Cahill, 483 F.2d 723 (3d Cir. 1973), aff'g 349 F.Supp. 501 (D.N.J.1972); Johnson v. White, 353 F.Supp. 69, 74–75 (D.Conn. 1972); Rhode Island Fair Welfare Rights Org. v. Department of S & R Serv., 329 F.Supp. 860, 866–867 (D.R.I.1971); Alvarado v. Schmidt, 317 F.Supp. 1027, 1034 (W.D.Wis.1970).

■ This requirement has special significance in the context of a wholesale reorganization of a state welfare program like the institution of a flat grant plan, because elements of the standard of need tend to get "lost" when the program undergoes its radical metamorphosis. Alvarado v. Schmidt, 369 F.Supp. 447, 450 n. 6 (W.D.Wis.1974). A state may unquestionably adopt a flat grant method of payout, Rosado v. Wyman, *supra* at 419, 90 S.Ct. 1207, and even accommodate budgetary realities by paring down its level of benefits, *id.* at 413, 90 S.Ct. 1207, but the new standard of need must account, for price and average fairly all factors in the old standard, *id.* at 419, 90 S.Ct. 1207. This means that in converting to a flat grant a state may not calculate its new standard of need from figures which did not accurately reflect its enunciated standard of need, thereby enshrining a lessened level of benefits without appearing to do so. *See* New Jersey Welfare Rights Org. v. Cahill, 349 F.Supp. 501, 512 (D.N.J.1972), aff'd, 483 F.2d 723 (3d Cir. 1973); Johnson v. White, *supra*, 335 F.Supp. at 77–78.

Plaintiffs, a class of welfare recipients, alleged that Rhode Island had, before adopting the flat grant system contested here, espoused an "actual need" measure of both the standard of need and the level of benefits in the provision of shelter payments for welfare clients, but had failed to adhere to this policy in practice. They alleged that the present measure of need, incorporated in the flat grant fails to reflect the previous standard as required by 42 U.S.C. § 602(a)(23) (1970) because inter alia it unlawfully presumes the availability of income to welfare mothers living with men assuming the role of spouse and fails to take into account the actual cost of rentals at the time the new program was adopted. Thus the figures from which the flat grant averages were computed, those the state budgeted for 1972, allegedly did not reflect fully the actual shelter needs of Rhode Island AFDC recipients current at the time of transition. Therefore it was alleged that the implementation of the flat grant effectively obscured the state's actual need standard in contravention of Rosado v. Wyman, *supra*, 353 F.Supp. at 412 (1970).

After a hearing, the district court concluded, 373 F.Supp. 36 (D.R.I.1974), that plaintiffs were irreparably harmed by the installation of the flat grant, a finding not challenged on appeal, and that there was a probability that they would prevail on the merits. *See* Keefe v. Geanakos, 418 F.2d 359, 360 (1st Cir. 1969). The court granted a preliminary injunction and defendant took this interlocutory appeal.

■ At the outset we note that in seeking reversal of the preliminary injunction defendant has shouldered the heavy burden of showing a clear error of law or an abuse of discretion on the part of the trial court, Engine Specialties, Inc. v. Bombardier, Ltd., 454 F.2d 527, 530 (1st Cir. 1972), whose tentative findings of fact are entitled to the normal strong presumption of correctness, *id.* We cannot accept defendant's contention that HEW's blanket approval of the state's plan is conclusive as to its legality in all respects when the objections presently urged by plaintiffs were never before the agency for consideration. Despite the deference undeniably due an agency's interpretations of a statute it is charged with administering, the courts have not hesitated to override HEW po-

ments in categorical aid to reflect increases in the cost of living, nevertheless encouraged them to choose such a course voluntarily by forcing the states to "accept the political consequences [of downward adjustments in the level of benefits paid] and bringing to light the true extent to which actual assistance falls short of the minimum acceptable," *id.* at 413, 90 S.Ct. at 1218. *See also* Bryant v. Carleson, 444 F.2d 353, 359 (9th Cir. 1971).

sitions espoused far less equivocally than here. *See, e. g.,* Carleson v. Remillard, 406 U.S. 591, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972); Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971). Naturally we encourage the court to solicit HEW's guidance as the proceedings progress. *See* Rosado v. Wyman, *supra,* 353 F.Supp. at 406–407.

■ The nub of this case is the proper characterization of Rhode Island's prior standard of need. The State's welfare policy manual provides:

"Rent, as paid may be approved by the case aide up to $80.00 a month. Rent between $80.00 and $120.00 a month is referred to the Casework Supervisor · for evaluation and decision. A [sic] AP–81 is required. ·Rent above $120.00 a month requires the approval of the Senior Supervisor.

"Approval for rent in excess of $80.00 a month is related to the size and needs of the family, the number of rooms required, the prevailing rates in the community and local minimum housing standards." Manual of Assistance Payment for Families, Section II at 5.

Every witness to testify on this point— the Director of the Department, the Administrator of its Assistance Payments Division, and two employees of the con-

sulting firm hired to prepare the flat grant—interpreted the state's policy as one of meeting shelter expenses as needed subject to a limitation of reasonability or prudence.[2] The court not unreasonably accepted this characterization. The limitations included within the state's expression of its policy coupled with the fact that other states have apparently survived analogous policies belie defendant's contention that the court's construction of the state standard would inevitably bankrupt its assistance program.[3]

The court relied on the testimony of the welfare directors of Cranston and East Greenwich to the effect that over a third of the welfare families in those cities were paying from $5 to $200[4] more for shelter than the state flat grant system allows them as evidence that the 1972 budget figures (from which the flat grant was computed) did not reflect the state's policy of meeting actual needs, subject to the limitation of reasonability. Defendant may of course show at trial that this statistic is false or unrepresentative.[5] Nevertheless, the fact that the rents of so large a proportion of welfare families in these two cities exceeded the state's budgeted payments is convincing *prima facie* evidence that those payments did not reflect "the actual cost of living within the communi-

2. Defendant's contention that Sister Maynard's testimony comparing budget with actual cost confused the court is misdirected, since the testimony went to the question of irreparable injury and was not relied on by the court in reaching its conclusion as to the state's standard of need.

3. We are constrained to express some hesitation at the court's equation of this "as needed" standard with a standard of actual cost to the recipient subject ·only to a limitation of reasonableness. The latter formulation seemingly broadens the recipient's discretion at the expense of the state's while blurring the guidelines according to which the adequacy of the state's budgeted payments may be evaluated. Administrator Murray of the Assistance Payments Division testified that Rhode Island "had a history of establishing need *based* on actual costs," (emphasis supplied), but also declared that shelter requirements were determined objectively by the actual cost of living within the community, not sub-

jectively by the recipient. Roger Soucy, an employee of the consulting firm, specifically distinguished Rhode Island's policy from an unqualified policy of meeting actual costs. The difference between the two formulations may be purely verbal, and the state's use of . out-of-date figures and its irrebutable presumption of income from a man assuming the role of spouse seem infirm whatever formulation is applied. We of course intimate no conclusion as to which of these two constructions is proper, but merely wish to note for the trial court's further consideration that they may possibly differ.

4. Defendant's contention that there is no evidence whatsoever in the record as to the dollar deviation between budget and actual cost is mistaken.

5. Such an argument could be made on the basis of the court's suggested survey of actual rents.

ty" consistently with the state's policy guidelines.

Defendant takes exception to the court's requirement that the state use current shelter figures in computing the standard of need incorporated in the flat grant. He correctly avers that § 602(a)(23) imposes no update requirement for cost of living increases after July 1, 1969, and that the courts have refused to characterize inflation as an element of the prior standard of need for which provision must be made after the implementation of a flat grant. *See, e. g.,* New Jersey Welfare Rights Org. v. Cahill, *supra.* However, in adopting a policy of meeting housing needs fully, the state in effect imposed an update requirement upon itself. In a period of rising shelter costs it is obvious that the calculation of the flat grant on the basis of year-old budgeted amounts not adequate at the time, much less currently, will result in an obscuring and diminution of the state's actual need standard. Though it need not recognize inflation after the institution of the flat grant, the state must compute the standard of need on the basis of the realities at the time of implementation.

Finally, defendant challenges the court's conclusion that budget figures reflected an improper conclusive presumption by the state that an unrelated man living with a family and assuming the role of spouse (the so-called MARS) contributes a pro-rata share of shelter costs. HEW regulations provide that the presence in the home of a "substitute parent" or "man-in-the-house" is not an acceptable basis for assuming the availability of income by the state. 45 C.F.R. § 233.90(a)(1973). The Supreme Court upheld this regulation as a valid interpretation of the Social Security Act in striking down California's conclusive presumption that the income of a MARS was available to the children in computing AFDC assistance. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1969).[6] The Court reasoned that HEW could validly conclude that only a person as near as a real or adoptive father has the consensual relation to the family making it reliably certain that his income is actually available for support of the children in the household. Defendant does not claim that a MARS is obliged to support the woman with whom he is living under state law. He seeks to distinguish this holding by emphasizing that the state's regulation presumed income only to the caretaker relative with whom the children reside, not to the children themselves. Neither the regulation nor the case supports this distinction. The AFDC program recognizes "the inseparability of the needs of the child from the needs of the relative with whom the child is living." Rodriguez v. Vowell, 472 F.2d 622, 624–627 (5th Cir. 1973). In that case the court invalidated a state regulation which in effect presumed that a dependent child's income in excess of his own needs would necessarily be available to meet the needs of his caretaker relative. It is true, as the state asserts, that this action does not directly challenge the legality of the MARS presumption, but the state ought not to be allowed to premise the calculation of the flat grant on an unlawful attribution of income policy.[7]

---

**6.** According to the Court, 397 U.S. at 557, 90 S.Ct. 1282, n. 8, a person whose presence is deemed essential to the well-being of the recipient of assistance and who is included in the family budget unit for calculation of need, 42 U.S.C. § 602(a)(7), is an "exception." Even if the Court meant that the income of such a person may conclusively be presumed available in determining the family's needs, the exception is inapplicable since the requirements of 45 C.F.R. § 233.20(a)(2)(vi) governing the designation of such persons have not been complied with here.

**7.** We draw the court's attention to the twin cases of Hurley v. Van Lare and Taylor v. Lavine. The district courts enjoined the enforcement of certain regulations of the New York Department of Social Services similar to the ones in question here on the grounds that they contravened the same HEW regulations we cite here. 365 F.Supp. 186 (S.D.N.Y. 1973), and Slip Op. 73–C–699 (E.D.N.Y.1973). The court of appeals reversed, holding that the state's regulations were not inconsistent with HEW's and remanded to a three-judge panel for a hearing on the constitutional is-

In sum, at this point we find no clear error of law or abuse of discretion on the part of the court below. The issue of the preliminary injunction is affirmed and the case remanded for trial.

Affirmed.

sues. 497 F.2d 1208 (2d Cir. 1974). The special district court then held the state's regulations unconstitutional, 380 F.Supp. 167, and the Supreme Court has noted probable jurisdiction in *Van Lare*, 419 U.S. 1045, 95 S.Ct. 617, 42 L.Ed.2d 638, and granted certiorari in *Taylor*, 419 U.S. 1046, 95 S.Ct. 617, 42 L.Ed.2d 639 (1974). Although it would serve no purpose to discuss these cases further at this point, we note that the instant case may be distinguishable inasmuch as the Rhode Island regulation, unlike New York's, 497 F.2d at 1215, seems to deny the AFDC mother her share of the housing expenditures, rather than simply requiring the MARS to contribute his ratable share.

