Roseanna ROSELLI et al.

v.

John J. AFFLECK.

Alice WILKINS et al.

v.

John J.. AFFLECK.

Civ. A. Nos. 5359, 74–136.

United States District Court,
D. Rhode Island.

May 25, 1976.

See also, D.C., 414 F.Supp. 419.

Diane Fuchs, Ronald Simon, of R. I. Legal Services, Inc., Providence, R. I., for Roseanna Rosselli.

Amato A. DeLuca, Warwick, R. I., for Alice Wilkins.

Harold E. Krause, Sp. Asst. Atty. Gen., Leonard Decof, Providence, R. I., for defendant.

OPINION

PETTINE, Chief Judge.

This matter is before the Court on cross-motions for summary judgment and a set of stipulated facts. At present there is a preliminary injunction in effect in conformance with my earlier opinion of February 11, 1974, 373 F.Supp. 36, which was affirmed on appeal by the First Circuit in 508 F.2d 1277 (1974). I shall refer to these cases collectively as *Roselli I.*

The law governing this case is firmly established by *Roselli I.* All that remains at this juncture is to determine whether the facts stipulated for a ruling on the merits require any modification of that earlier decision.

I

In *Roselli I,* this Court concluded that the State had not complied with superseding federal law, 42 U.S.C. § 602(a)(23), in implementing the shelter standards for its flat grant for recipients of Aid to Families with Dependent Children (AFDC) who live in private housing.[1] In *Rosado v. Wyman,* 397

---

1. The Court's subject matter jurisdiction is discussed in *Roselli I, supra,* 373 F.Supp. at 39, and is not disputed here. On preliminary injunction, the certified class in *Roselli I* consist-

U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the Supreme Court interpreted 42 U.S.C. § 602(a)(23) to require a state which converts to a flat grant method for determining need to account for, fairly price and fairly average all factors under the old system to prevent the actual standard of need from being obscured or reduced in the transition. In order to apply that requirement in *Roselli I*, this Court started by finding that Rhode Island determined its "standard of need", *i. e.*, the "yardstick for measuring who is eligible for public assistance", *Rosado, supra* at 408, 90 S.Ct. at 1216, on the basis of actual need subject only to a limitation of reasonableness, and set its "level of benefits", *i. e.*, "how much assistance will be given", *id.*, at 100% of need. *Roselli I, supra*, 373 F.Supp. at 42. That finding is not disputed herein. *See* Stipulated Facts # # 17, 18. *Cf. Roselli I, supra*, 508 F.2d at 1281 n. 3. The Court then found that the State's use of 1972 figures to average its November 1973 shelter standards impermissibly obscured and lowered the shelter standard of need in two respects.

### A

First, the Court found that in averaging the 1972 figures, the State included pro-rated rental amounts for "non-square" AFDC households [2] which were "based upon an irrebuttable presumption that the non-recipient . . . contributed to the household expenses an amount equal to his or her pro-rata share of shelter costs." *Id.*, 373 F.Supp. at 46. The use of such irrebuttable presumptions is improper. *Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Lewis v. Martin*, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1969); *Palmieri v. Affleck*, C.A. No. 74–69 (D.R.I. 1/7/75). In *Roselli I*, this Court concluded that application of an unlawful

attribution of income policy "had a depressing effect on the grant level of those recipients affected and would thus obscure and lower the standard of need" in violation of 42 U.S.C. § 602(a)(23). *Id.*, 373 F.Supp. at 47. The First Circuit affirmed this finding and conclusion of law, 508 F.2d at 1282.

There is no reason to modify those rulings. According to the stipulation of facts entered for consideration on the merits, the State concedes that its 1973 shelter flat grant was tainted by the unlawful policy and that "[a]t least 20% of all AFDC cases in October, 1973, involved the pro-rating of shelter costs" pursuant to this policy. Stipulated Facts # # 7, 8.

Furthermore, upon inquiry by the Court, it was conceded by the defendant at oral argument that the State does not presently have available figures for either "actual" or "budgeted" shelter costs to AFDC recipients in October 1973 which do not reflect the operation of this illegal policy and that only now—*i. e.*, three months after the parties entered the stipulation of facts and a full year and four months after the First Circuit issued its opinion in *Roselli I*—has the State initiated a "survey" in an attempt to reconstruct untainted figures for October 1973. *See also* Stipulated Fact # 14. At oral argument, counsel for the defendant acknowledged that the so-called "survey" consisted of field interviews with 32 out of the approximately 3000 "non-square" AFDC households in October 1973 and was unable to give the Court any assurance that the survey had been scientifically developed or would produce accurate or statistically reliable results. In contrast, the affidavit of Joseph A. Murray, Administrator of Assistance Payments for the Department of Social and Rehabilitative Services (exhibit B to defendant's motion for summary judg-

---

ed of all AFDC recipients living in private housing. The plaintiffs' challenge there to the averaging together of private and public housing rents was rejected, *id.* at 43. That issue has been dropped by plaintiffs as an issue for decision on the merits, in part due to the consolidation of *Roselli*, C.A. No. 5359 with *Wilkins v. Affleck*, C.A. No. 74–136, being essentially the

public housing analogue to *Roselli*. As a result of this consolidation, plaintiffs now represent the class of all AFDC recipients living in Rhode Island.

2. "Non-square" AFDC households are those which include individuals who are not eligible to receive AFDC benefits.

ment), indicates that a plan to eliminate all vestiges of the unlawful attribution of income policy was instituted on September 30, 1975. The Court accepts the defendant's unchallenged contention that as of the November 26, 1975, payroll, application of the unlawful policy was no longer reflected in the calculation of shelter grants to AFDC recipients. *See* Stipulated Fact # 12. Under these circumstances, the Court is compelled to conclude that it is not reasonably possible to obtain an accurate assessment of the average "actual" or "budgeted" shelter costs prior to November 26, 1975.[3]

### B

The second infirmity of the November 1973 shelter flat grant was its reliance on out-dated figures of "budgeted" rents in November 1972. The State had contended that since § 602(a)(23) specifically imposed a one-time-only upgrade of standards to reflect cost of living increases as of July 1, 1969, it could rely upon any post-July 1969 figures, such as the 1972 amounts. The State's position was rejected, however, on the basis of the separate § 602(a)(23) fair pricing and fair averaging requirement which would not be satisfied by the use of

outdated figures in Rhode Island.[4] This Court explained its reasoning, 373 F.Supp. at 48:

"A 'Standard of Need' articulated as actual need prior to the conversion to a consolidated grant must, therefore, be based upon up-to-date prices as of the date of implementation, or else the 'standard of need' as of the date of implementation cannot reflect actual need." (Citation omitted.)

The Circuit Court agreed, stating, 508 F.2d at 1282:

"Defendant takes exception to the court's requirement that the state use current shelter figures in computing the standard of need incorporated in the flat grant. He correctly avers that § 602(a)(23) imposes no update requirement for cost of living increases after July 1, 1969, and that the courts have refused to characterize inflation as an element of the prior standard of need for which provision must be made after the implementation of a flat grant. *See, e. g., New Jersey Welfare Rights Org. v. Cahill,* [483 F.2d 723 (3 Cir. 1973)] *supra.* However, in adopting a policy of meeting housing needs fully, the state in effect

---

3. This conclusion completely undermines the defendant's argument that, to comply with § 602(a)(23), the State need only implement a shelter flat grant based upon averages which equal or exceed the amount of average "actual" shelter costs in November 1973, when the flat grant was originally instituted. Even assuming *arguendo* the validity of this proposition, it simply cannot be applied to the facts of this case, in view of the Court's conclusion that there is no way today to accurately determine the average "actual" shelter costs in November 1973 without relying upon the unlawful prorating policy. In other words, defendant's claim that the State may base its shelter flat grant upon the December 1975 average "budgeted" rent ($87.88) because that figure exceeds the average "actual" rent in November 1973 ($87.23) must be rejected, in view of the parties' stipulation that the $87.23 figure reflects the unlawful prorating policy and "not . . . the actual cost of shelter to households" in November 1973. Stipulated Fact # 14. *See* Stipulated Facts # # 11, 12, 13.

Although the average "actual" shelter cost for December 1975 has not been provided to the Court, a comparison of these figures for

October 1975 ("budgeted" = $90.98; "actual" = $100.49) strongly suggests that the December 1975 "actual" rent figure is much higher than its "budgeted" rent counterpart. I note in passing that the discrepancy between the October 1975 "actual" and "budgeted" rent figures ($9.51) is even larger than it was at the time the flat grant was first implemented. (Average "actual" rent in November 1973 = $82.23; average "budgeted" in October 1973 = $84.40; approximate difference = $2.83.) *See* Stipulated Facts # # 4, 13, 15.

4. Before resolving the merits of this controversy, the Court sought an amicus brief from the U. S. Department of Health, Education and Welfare. *See Roselli I, supra,* 508 F.2d at 1281. To the extent that the amicus brief submitted focuses on the extant issues, it supports the Court's conclusions herein. However, the bulk of that brief is devoted to a reargument of the State's position that, under § 602(a)(23), it could use 1972 figures to implement its November 1973 flat grant. That contention was squarely rejected in *Roselli I* and nothing in HEW's brief supports its reconsideration herein.

.imposed an update requirement upon itself. In a period of rising shelter costs it is obvious that the calculation of the flat grant on the basis of year-old budgeted amounts not adequate at the time, much less currently, will result in an obscuring and diminution of the state's actual need standard. Though it need not recognize inflation after the institution of the flat grant, the state must compute the standard of need on the basis of the realities at the time of implementation." (Footnote omitted.)

This Court's earlier conclusion that the 1972 figures did not reflect "the actual cost of living within the community" and the evidence upon which it was based have not been challenged here. *Cf. Roselli I, supra,* 508 F.2d at 1281. To the contrary, that conclusion is borne out by stipulated facts # # 3 through 6, which provide:

"3. The average 'budgeted' shelter amount for November, 1972 was just less than $80.00.

4. The average amount budgeted for shelter in October, 1973 [,] the month before the implementation of the 1973 flat grant[,] was $84.40.

5. In computing the November, 1973 flat grant for shelter, defendants statistically averaged the amount of shelter cost they provided to AFDC recipients ('budgeted'), rather than the actual amount of shelter cost to the recipients ('actual').

6. This 'budgeted' shelter amount was less than the actual cost of shelter to AFDC recipients in at least 25.2% of all AFDC cases in October, 1973."[5]

■ The Court, therefore, concludes that nothing in the record on the merits casts

doubt upon its findings of fact on preliminary injunction or the conclusions of law derived therefrom and affirmed on appeal. *Roselli I, supra.* The Rhode Island flat grant for shelter instituted in November 1973 did not comport with the controlling federal requirements of 42 U.S.C. § 602(a)(23) as interpreted by the Supreme Court in *Rosado v. Wyman, supra.* It follows that plaintiffs "are entitled to declaratory relief and an appropriate injunction by the District Court against payment of *federal* monies according to the [1973 shelter] schedules." *Id.,* 397 U.S. at 420, 90 S.Ct. at 1222 (emphasis in original).

## II

■ We must now address the question of appropriate relief.[6] First, the infirmities of the 1973 plan must be remedied. As to part A above, it is conceded that the consequences of the unlawful attribution of income policy were not eliminated until the November 26, 1975 payroll. Thus, the shelter flat grant cannot be based upon rent figures which antedate the November 26, 1975 payroll. As to part B, the State argues that it need only institute that flat grant which would have been appropriate if implemented in November 1973. The plaintiffs contend that, having lost on the merits, the State can no longer rely on its abortive attempt to implement the flat grant in 1973 and must account for subsequent rises in the cost of housing in order to comport with § 602(a)(23) and its own policy of meeting actual shelter needs in full. The Court does not reach this issue, for it is clear that the State is unable to determine what would have been an appropriate shelter flat grant in 1973. *See* note 3, *supra.*

---

**5.** It may be noted that the "25.2%" discrepancy acknowledged in Fact # 6 is measured between "budgeted" rent and "actual" rent figures which reflect the unlawful attribution of income policy. The Court has found that this unlawful policy itself had a depressant effect upon the true figure for "actual" rent in 1973, which is unknown. Thus it is reasonable to assume that if a comparison could now be made between the listed "budgeted" rent figures and an untainted set of figures for "actu-

al" rent, the 25.2% figure would prove to be a quite conservative estimate.

**6.** Rather than comply with the following requirements in implementing a flat grant, the State could, of course, drop out of the federal program. In view of the substantial amount of federal funds which would thereby be lost, it is most unlikely that the State would choose this alternative.

Since the State cannot reconstruct past realities, it is forced to turn to present realities.

The Court recognizes that reliance on current figures will require the State to take into account increases in the cost of shelter which occurred *after* it first attempted to institute the flat grant in 1973. It is true, as the defendant complains, that the State would not have been required to account for this period of inflation if it had been successful in instituting the shelter flat grant in 1973. *See Roselli I, supra,* 508 F.2d at 1282.

The Court is constrained to state that it is not moved by the State's complaint. The State did not succeed in implementing the shelter flat grant in 1973 because *it* failed to comply with controlling federal law which by then had been clearly enunciated by the Supreme Court of the United States in 1970 in *Rosado v. Wyman, supra,* and in 1969 in *Lewis v. Martin, supra.* The State had a wealth of judicial and administrative determinations upon which it could rely, but nonetheless failed to fashion a lawful flat grant for shelter.[7] Of course the State was well within its rights to contest this action on preliminary injunction, on appeal, and on the merits, all of which postponed the day when a lawful flat grant could be imposed. In the interim, however, despite the Supreme Court's rejection of an irrebuttable presumption of available income in a "non-square MARS" household, *Lewis v. Martin, supra,* and this Court's analogous conclusion in *Roselli I,* the State chose to continue its unlawful attribution of income policy. It was only when that policy was directly and successfully challenged in *Van Lare v. Hurley, supra,* and *Palmieri v. Affleck, supra,* that the State discontinued it, in full, effective November 26, 1975. As a result, the State has only itself to blame for the unavailability of earlier accurate figures upon which to base its shelter flat grant.

Furthermore, it cannot be emphasized too strongly that requiring the State to rely upon current, inflated figures to determine its shelter flat grant does not mean that the State will have to budget one cent more for AFDC than it would if it were allowed to employ the figures proposed by the defendant. Once the State acknowledges the true "magnitude of the public assistance requirement", it may "pare down payments to accommodate budgetary realities by reducing the percent of benefits paid or switching to a percent reduction system." *Rosado v. Wyman, supra,* 397 U.S. at 412–413, 90 S.Ct. at 1218. I am not impressed with the defendant's cry of "foul!" He knows full well that it is entirely within the State's prerogative to ratably reduce the percentage of benefits to AFDC recipients to the 1973, or earlier, payment levels. But in so doing, the State would have to acknowledge its inability or disinclination to adhere to its stated policy of meeting 100% of actual need. Requiring the State to "lay bare the extent to which [its] programs fall short of fulfilling actual need," *Rosado v. Wyman, supra* at 413, 90 S.Ct. at 1218, is, of course, the precise function of 42 U.S.C. § 602(a)(23) and the genesis of this law suit. Thus at the heart of defendant's complaint is another attempt to avoid the requirements of § 602(a)(23) and its political consequences. *Id.*

The defendant raises one final issue. He claims that he should be permitted to determine his flat grant for shelter on the basis of the current figure for average "budgeted" rent, rather than average "actual" rent because the former figure reflects the State's policy to provide shelter costs on the basis of actual cost subject to a limitation of reasonableness. He does not, however, claim that the average "actual" rent figure fails to reflect that policy as well, but rather that the two figures are "close enough" to permit reliance upon average "budgeted" rent.

---

7. In its amicus brief, HEW points out that its approval of the shelter flat grant plan submitted by Rhode Island in 1973 was based upon the mistaken belief that Rhode Island did not employ irrebuttable presumptions in determining available income for "non-square" AFDC households.

416

■ In considering the 1973 figures, this Court concluded that the State's use of "budgeted" rather than "actual" rents served to obscure its standard of need for shelter and that, as a result, the State must base its shelter flat grant upon average "actual" shelter costs. I find nothing in the record to cause me to reach a different conclusion as to the 1975 figures.[8]

Utilization of the current "budgeted" as opposed to "actual" rent figure is unacceptable for another reason. It has been stipulated that the Department's three area supervisors are not adhering to express departmental policy in determining "budgeted" rent where "actual" rent exceeds $120.00 per month. Departmental policy defines the shelter standard of need as actual need subject to a limitation of reasonableness. It specifies the following factors as bearing upon a determination of "reasonableness":

"family size and needs, number of rooms required, local minimum housing standards, and prevailing rates in the community." Stipulated Fact # 18.

The area supervisors in practice have disregarded the notion of "prevailing rates in the community". They have substituted their own criterion and limit approval to lowest rates available in the entire area under each supervisor's jurisdiction. This standard does not consider variations in shelter costs between communities or actual availability of: 1) housing which meets minimum housing standards; or 2) *any* housing, at the so-called lowest rates. Furthermore, each area supervisor has developed his own schedule for "lowest available rates" in a completely informal, outdated and unscientific manner. Stipulated Facts # # 19–28.

In consequence, the Court must conclude that the area supervisors' practice does not conform with and is far more restrictive than the Department's stated definition of the shelter standard of need. This nonconforming practice is reflected in current figures for "budgeted" rents which, in October 1975, on the average were almost $10.00 less than "actual" shelter costs. *See* note 3, *supra.* As a result, utilization of current "budgeted" rents to compute the shelter flat grant would impermissibly obscure and lower the shelter standard of need in violation of 42 U.S.C. § 602(a)(23). If I may paraphrase the Circuit Court's conclusion on an analogous issue, *Roselli I, supra,* 508 F.2d at 1282:

It is true, that this action does not directly challenge the legality of the area supervisors' practice, but the state ought not to be allowed to premise the calculation of the flat grant on an unlawful practice which conflicts with express state policy.

To summarize, the State has two options in implementing its shelter flat grant. *See* note 6, *supra.* It may rely upon average "actual" shelter costs for November 26, 1975, or thereafter. Or it may recompute "budgeted" rents for November 26, 1975, or thereafter, to conform to stated departmental policy where "actual" rents exceed $120.00 per month. If the defendant is then able to show that budgeted shelter costs in fact comply with the stated policy, the State could then employ average "budgeted" rents. It must be noted, however, that compliance with this latter option will necessitate further delay in the final resolution of this protracted litigation and postpone final implementation of a full flat grant welfare system in Rhode Island. Of course this delay need not happen as I have

**8.** The defendant's attempt to show that the current averages for "budgeted" and "actual" rents are "close enough" is not persuasive. Utilizing the figures for October 1975, *see* note 2, *supra,* he finds that average "budgeted" October 1975 rent represented 90.5% of average "actual" rent.

This percent figure does not tell us the number of AFDC cases in which "actual" rent ex-

ceeded "budgeted" rent or by how much. I can only recall that the analogous figures for October 1973 indicate that average "budgeted" rent constituted 96.8% of average "actual" rent at that time. Despite this figure, which is even closer than 90.5%, "budgeted" shelter costs were less than "actual" shelter costs in October 1973 in at least one-fourth of all AFDC households. Stipulated Fact # 6.

pointed out, above. That choice, however, is up to the State. Whichever choice it ultimately decides to make, plaintiffs are entitled to have a permanent injunction entered which requires the defendant, insofar as payment of federal monies is concerned, to continue AFDC purchase of shelter payments on an "as need" basis. This injunction will continue in effect until the defendant demonstrates that he is prepared to institute a flat grant for shelter in conformance with my decision today.