617 F.2d 296
 13 ERC 1865, 9 Envtl. L. Rep. 20,767
 CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., et al.,
Plaintiffs, Appellants,
v.
Cecil D. ANDRUS, etc., et al., Defendants, Appellees,
Atlantic Richfield Company et al., Intervenors, Appellees.
COMMONWEALTH OF MASSACHUSETTS, Plaintiff, Appellant,
v.
Cecil D. ANDRUS, etc., et al., Defendants, Appellees,
Atlantic Richfield Company, et al., Intervenors, Appellees.
 Nos. 79-1585, 79-1586.
 United States Court of Appeals,
First Circuit.
 Argued Nov. 5, 1979.
Decided Nov. 6, 1979.
 
 Stephen Leonard, Chief, Asst. Atty. Gen., Environmental Protection Division, Boston, Mass., with whom Jose R. Allen, Asst. Atty. Gen., Environmental Protection Division, Francis X. Bellotti, Atty. Gen., Commonwealth of Massachusetts, Boston, Mass., Richard Cohen, Atty. Gen., State of Maine, and Cabanne Howard, Asst. Atty. Gen., Augusta, Maine, were on an application for an injunction pending appeal and memorandum in support thereof, for plaintiff, appellant, the Commonwealth of Massachusetts.
 Douglas I. Foy, Boston, Mass., with whom Sarah M. Bates, Boston, Mass., was on an application for an injunction pending appeal and memorandum in support thereof, for plaintiffs, appellants, the Conservation Law Foundation of New England, Inc., et al.
 Mary Ann Walsh, Atty., Dept. of Justice, Washington, D. C., with whom James W. Moorman, Asst. Atty. Gen., Peter R. Steenland, Jr., William M. Cohen, Michael W. Reed, and Patricia Young, Attys., Dept. of Justice, Washington, D. C., were on memorandum in opposition to application for stay for defendants, appellees, Cecil D. Andrus, et al.
 Allen P. Rubine, Deputy Atty. Gen., Providence, R. I., with whom Dennis J. Roberts, II, Atty. Gen., Providence, R. I., was on memorandum in opposition to application for stay for State of Rhode Island and Providence Plantations, J. Joseph Garrahy, Governor, intervenors, appellees.
 E. Edward Bruce, Washington, D. C., with whom Mark D. Nozette, Boston, Mass., Covington & Burling, Washington, D. C., G. M. Moriarty, Ropes & Gray, Boston, Mass., J. Berry St. John, Jr., and Liskow & Lewis, New Orleans, La., were on memorandum in opposition to application for stay for Atlantic Richfield Co., et al., intervenors, appellees.
 Before COFFIN, Chief Judge, and CAMPBELL, Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants seek an injunction pending their appeal from a denial of a preliminary injunction of sale of oil and gas leases under Outer Continental Shelf, North Atlantic Oil and Gas Leases Sale No. 42, scheduled for November 6, 1979.
 
 
 2
 The district court made no explicit finding of irreparable harm, being willing to assume that if any irreparable harm were to be forthcoming, it would be immediate, in view of the court's uncertainty whether future regulations setting forth Best Available and Safest Technology (BAST) requirements would be applicable to Sale 42 lease questions. The court, addressing the merits, considered challenges to the Environmental Impact Statement and a Final Supplement to Environmental Statement (FSES) issued by defendant Secretary of the Interior and in asserted violation of The Endangered Species Act (ESA), 16 U.S.C. § 1531. It concluded that it could not say that it was likely that plaintiffs would succeed on the merits.*
 
 
 3
 In argument before us appellants have argued that the lease sale is the event that will trigger irreparable harm; that the Final Supplemental Environmental Statement fails to set forth an adequate analysis of management of the Sale 42 area or any portion thereof as a marine sanctuary; that there was no adequate analysis of the recent "blowout" in the Bay of Campeche; that, contrary to the requirement of the ESA, Sale 42 will constitute an "irreversible (and) irretrievable commitment of resources," 16 U.S.C. § 1536(d), which would foreclose the chance to avoid jeopardizing the endangered right and humpback whales; and that protective regulations, particularly those on BAST, Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1347(b), have not been drafted or implemented.
 
 
 4
 We consider first the applicable standard of review. Appellants would have us lower the threshold of showing probability of success, citing Providence Journal Company v. Federal Bureau of Investigation, 595 F.2d 889 (1st Cir. 1979).
 
 
 5
 In Providence Journal Co. we ruled that "(w)here . . . the denial of a stay will utterly destroy the status quo, irreparably harming appellants, but the granting of a stay will cause relatively slight harm to appellee, appellants need not show an absolute probability of success in order to be entitled to a stay." Id. at 890. In the present case, appellants are not entitled to Providence Journal's relatively lenient standard of review of the merits, for appellants have not shown the likelihood of the degree of irreparable injury which that case contemplates. Here there will undoubtedly be some legal and environmental consequences resulting from the lease sale. However, as our discussion of the notice of sale provisions, infra, reveals, the reserved power and obligations of the Secretary to deal with environmental concerns are substantial. We are satisfied, therefore, that today's single step forward beyond the lease sales does not constitute the kind of massive, irretrievable alteration of the status quo contemplated by Providence Journal. It is noteworthy as well that no "relatively slight harm to appellee" is guaranteed if we grant the injunction. Appellees assert a countervailing national policy favoring expeditious development of energy resources, a policy which, in this case, has been delayed for nearly two years. The granting of an injunction pending appeal will mean further delay, an equity cutting in favor of appellees which we cannot ignore.
 
 
 6
 We, therefore, analyze appellants' attack on the district court's ruling under the customary standard. Appellants must establish that the district court abused its discretion or committed a clear error of law in ruling that appellees stood a better chance of success on the merits. E. g., National Tank Truck Carriers, Inc. v. Burke, 608 F.2d 819 at 823 (1st Cir. 1979); Roselli v. Affleck, 508 F.2d 1277, 1280 (1st Cir. 1974).
 
 
 7
 Appellants' main argument in support of their contention that the district court abused its discretion or clearly committed an error of law in judging the likelihood of success on the merits is that the lease sale will violate provisions of the ESA. Specifically, appellants contend that there is disparity between the standards set forth in the ESA and §§ 1331 & 1334 of the OCSLA for determining what steps are necessary to protect certain endangered species. It is asserted that the sale of leases will force the Secretary of Interior to apply the arguably less restrictive standards of the OCSLA, and thus irretrievably reduce the protection provided to the endangered species.
 
 
 8
 Whether or not this argument concerning the asserted disparity between the statutes is correct, it ignores the fact that the notice of sale provisions and stipulations provide the Secretary with additional authority to regulate post-sale plans and conduct. The district court, in finding that no irreversible commitment had been made, sufficient to constitute a violation of 16 U.S.C. § 1536(d), stressed several of the lease stipulations. We have read the notice of sale which, of course, conditions any rights acquired by every successful lessee. The provisions in this notice seem to us to support the conclusion of the district court. Stipulation 2 allows the government's Supervisor to require environmental surveys if he identifies a need for additional protection; as a result of such surveys, sites of operations may be relocated and operations may be modified so that "significant biological populations" may not be adversely affected; no action having any effect upon biological populations or habitats may be taken until the Supervisor gives written directions. Stipulation 4 allows the Supervisor to require disposition of drill cuttings and muds by transporting them to disposal sites.
 
 
 9
 Paragraph 15 notifies all bidders that new OCSLA amendments apply to all new leases. Bidders are told of an interagency Biological Task Force which will consult on both surveys and appropriate courses of action. Notice is further given that the Supervisor "will require the use of the best available and safest technologies which the Secretary determines to be economically feasible." Bidders are also advised that a "developmental phase Environmental Impact Statement" is to be prepared for the North Atlantic lease sale area. Finally, the Notice ends with paragraph 16: "Operations on all leases resulting from this sale will be conducted in accordance with the provisions of all Outer Continental Shelf Atlantic Orders, as of their effective date, and any other applicable OCS Order as it becomes effective."
 
 
 10
 In sum, we can only conclude that the protective powers and obligations of the Secretary reserved under the notice of Sale 42 are wide-ranging, limited only by discretion and good faith.
 
 
 11
 Appellants' second main argument on the merits is that the sale should be enjoined until more specific BAST regulations are promulgated to insure that the successful bidders will be bound by them. However, both the OCSLA and the Notice of Sale clearly provide for application of BAST regulations to pre-existing leases. Moreover, the definition of what constitutes the best available technology is itself an ongoing process, tailored to adjust to changing technology. Appellants' position ignores this fact and, if adopted, would eliminate the flexibility in developing BAST regulations which the OCSLA envisions.
 
 
 12
 Appellants also attack the adequacy of the FSES analysis of a marine sanctuary designation for Georges Bank. They point out, not without justification, that the document is a pedestrian piece which, while reciting some of the obvious considerations, does not discuss marine sanctuary management in a searching manner. The purpose of an EIS is, however, to insure a "fully informed and well-considered decision." Vermont Yankee v. NRDC, 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978), and there is evidence that the Secretary of the Interior was exposed at some length to the pros and cons of the matter, although he remained scarcely receptive.
 
 
 13
 The National Oceanic and Atmosphere Administration (NOAA) published an issue paper which Interior reviewed and criticized. After holding hearings on the subject of marine sanctuary designation in Portland, Gloucester, and New Bedford, and discussing the matter with Interior, NOAA announced withdrawal of Georges Bank as an active candidate for marine sanctuary designation in return for Interior's agreement to withdraw 12 tracts and take certain remedial steps. Especially in light of the fact that NOAA has withdrawn Georges Bank as an active candidate for marine sanctuary designation, we are not persuaded that the Secretary of the Interior's formal analysis was so inadequate, taken in this context, as to violate NEPA. At least this is our initial impression an impression the district court reached after its more extended exposure to all the facts. The court's conclusion does not appear so questionable at this juncture as to justify our granting present injunctive relief.
 
 
 14
 One final argument, recognized by the district court, criticized the failure of Interior to conduct an adequate analysis of the Bay of Campeche "blowout." The need to be alert to all such phenomena is obvious. It seems equally obvious that the process of gathering and assessing information is a continuing one. We do not think the court abused its discretion in refusing to enjoin Sale 42 for this alleged deficiency.
 
 
 15
 We therefore conclude that we cannot, on this preliminary and foreshortened review, say that the district court committed such error of law or abuse of discretion in holding that plaintiffs had not demonstrated a likelihood of prevailing on the merits as to warrant injunctive relief by this court pending appeal.
 
 
 16
 The motions for stay pending appeal are denied.
 
 
 
 *
 At one point the court, after citing the ordinary and correct standard of review ("arbitrary, capricious or illegal"), added a reference from our opinion in Commonwealth of Massachusetts v. Andrus, 594 F.2d 872, 888 (1st Cir. 1979), to such outrageous conduct as might justify extraordinary judicial oversight. That this was a non-dispositive aberation is made clear, we think, by the penultimate sentence of the court's memorandum, finding it unlikely that the court would find the Secretary's decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."