[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action of petition for paternity was filed on December 8, 1988. After a trial by jury the defendant was found to be the father of the child Hali Miller. A hearing was held on March 9, 1992 to determine the present and past child support obligations of the defendant in accordance with Conn. Gen. Stat. 46b-171.[1]
At the hearing the following issues were raised: 1. Is the defendant liable for the past support of the child only or is he liable for the support and maintenance of the mother and child as a unit? 2. Since the mother and child have been recipients of Aid to Dependent Children (AFDC) during the CT Page 3195 period in question are the father's past child support payments based upon his ability to pay during those years or are they based solely upon what the State has paid on behalf of the child/mother unit? 3. Is the defendant liable for attorneys fees for private counsel when the petitioner could have had the entire matter prosecuted by the Attorney General's office alone?
 I
The defendant has argued to this court that he is only financially responsible for the exact AFDC costs the state of Connecticut has paid for the child Hali and not any of the costs of maintenance of the caretaker mother. In Castellani v. Criscuolo 39 Conn. Sup. 485 (1983) the Appellate Court found that the fact that the plaintiff was eligible for AFDC created a presumption that her support was necessary for the proper maintenance of the child. Our court relied heavily upon the reasoning of Rodriguez v. Vowell 472 F.2d 622, 624-25 (5th Circ. 1973) which stated:
 ". . . .Recognizing the inseparability of the needs of the child from the needs of the relative with whom the child is living, 401 of the Act (42 U.S.C. § 601) emphasizes that the purpose of the AFDC program is to help the child by preserving and strengthening the family entity. Congress appreciated that granting aid to the dependent child alone would not fully meet the child's need for care and therefore required that the caretaker be a relative of a specified degree so that the caretaker would have a natural concern for the child's welfare. Thus, in measuring need, the need of the family unit is the question, not the need of the child alone; . . .
Rodriguez at 624-25.
Here the state AFDC costs were for the maintenance of a family of two, not for the child alone. To allow the defendant to repay for the child alone would allow him to financially benefit from the humiliating experience of being supported by the State of Connecticut at a financial level that must be characterized as minimal survival. During the trial the defendant offered scant evidence that the caretaker mother worked "under the table" for short durations and that she lived in a unit that could or should have disqualified her for AFDC payments. None of that evidence either individually or in concert rebuts the presumption that the AFDC benefits paid to the mother/daughter were not necessary for their proper care and maintenance. This court finds that the defendant is liable CT Page 3196 for the costs of maintenance of the mother and daughter while on AFDC.
 II
Pursuant to 46b-160 (a) the defendant is liable for the support of the child from August 6, 1986 to present. He maintains that when the court assesses the past support that he should only pay exactly what the state has paid to the support of the unit and not base the payments on his ability to pay during the applicable period. Based upon the evidence presented this court finds that the total amount paid to the mother/daughter unit by the state of Connecticut was approximately $24,000. The defendant during the same period of time based on his ability to pay, would have been able to pay $48,000 in child support. The defendant asks this court to accept a tortious reading of the statute, Conn. Gen. Stat. 46(b)-171, that defies common sense. In essence the defendant asks this court to read that the statute requires a strict dollar for dollar reimbursement for past support based upon the AFDC payments paid by the State, but agrees that his ability to pay is the proper standard for future support. To adopt such a position would allow fathers to delay acknowledging their parental responsibilities while their children are on welfare, especially in cases where the father's ability to pay exceeds the minimal amount paid by welfare by the State. Reading the statute as a whole this court finds that it must be interpreted that "ability to pay" is the standard used to set both past and future support payments.[2] To rule otherwise would compound the financial deprivation the child experiences by being on welfare and allow a financial windfall to the father who had the ability to pay more than the meager state AFDC payment but chose not to do so.
Here, future support payments based on the defendant's ability to pay, has the effect of immediately putting more money into the unit, so much so, that the plaintiff and her child are no longer eligible to be supported by the State. While more dollars to live on does not necessarily guarantee a better life for his child, those dollars, if applied properly, have to better the child's lifestyle directly or indirectly. This court finds that the defendant owes past support, based upon his ability to pay, in the amount of $48,732.
Connecticut Gen. Stat. 46b-171 allows the court to order attorney's fees that are "reasonably commensurate with the financial ability of the defendant." Here the defendant asks this court to deny any counsel fees to the plaintiff because she could have been represented by the State's Attorney General for no fee, and that it was not necessary to hire CT Page 3197 private counsel to prosecute the paternity petition. While recognizing that the plaintiff could have chosen to have the State Attorney General's office pursue this matter alone, the fact is that she hired private counsel who worked symbiotically with the Attorney General's office to bring the matter to trial and to its successful conclusion. This court finds that attorney's fees in the amount of $11,046.94 are reasonable.
In finding what is owed by the defendant father this court will make the following payment schedule taking into consideration the financial income of the defendant father.
 1. The court finds the Bill of Costs to to be $3,048.85, that is to be paid within 30 days of this order.
 2. That attorney fees in the amount of $11,046.94 will be paid at the rate of $2400 per year payable on or before January 15th of each year. First payment due will be 1993. The balance shall be carried at the rate of 5% per year compounded yearly.
 3. The past child support due of $48,732 shall be payable at the rate of $50.00 per week until the entire balance is paid off. Recognizing that the amount to be paid to the State of Connecticut for AFDC support is in the $24,000 to $30,000 range this court orders that once the state obligation is fulfilled, a Trust Fund be started in the child's name, with both parents as trustees for the sole purpose of setting aside money for college expenses for the child, Hali Miller. If the child elects not to pursue accredited higher education once the entire debt is paid off, the fund will be dissolved and distributed to Hali Miller.
 4. That the defendant maintain medical insurance for the minor child at his cost covering any medical, dental and vision needs and the parties split equally all unreimbursed medical, psychiatric/psychological, dental, orthodontic and optical costs. That the signature of the plaintiff shall constitute a valid authorization for submission of medical claims for the minor CT Page 3198 child, in accordance with Conn. Gen. Stat. 46b-84 (c).
 5. The defendant shall maintain a $100,000 term life insurance policy naming the minor irrevocable beneficiary until she reaches the age of eighteen.
 6. That the defendant have reasonable rights of visitation to see his daughter. Plaintiff shall consult with defendant regarding medical, religious and educational decisions affecting the minor child and the parties shall use their best efforts to mutually resolve any disputes regarding said decisions.
NORKO, JUDGE.